UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EVA MARIE PHILLIPS, et al., ) | CASE NO.  5:10-cv-1741 |
| ) | |
| PLAINTIFFS, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| ) | |
| PHILIP MORRIS COMPANIES INC, ) | |
| nka ALTRIA GROUP, INC., et al., ) | |
| ) | |
| DEFENDANTS. ) | |

Before the Court are two dispositive motions: defendants' motion for partial judgment on the pleadings on plaintiffs' class action claim under the Ohio Consumer Sales Practices Act (CSPA), Ohio Rev. Code § 1345.01 *et seq.* (Doc. No. 16); and defendants' motion for judgment on the pleadings on plaintiffs' claim under the Ohio Deceptive Trade Practices Act (DTPA), Ohio Rev. Code § 4165.01 *et seq*. (Doc. No. 17.) Both motions are fully briefed and at issue. (*See* Doc. Nos. 22, 25 [plaintiffs' amended response to defendants' motion for partial judgment on the pleadings on plaintiffs' CSPA claim; and defendants' reply, respectively]); (*see* Doc. Nos. 24, 26 [plaintiffs' amended response to defendants' motion for judgment on the pleadings on plaintiffs' DTPA claim; and defendants' reply, respectively].)

I. BACKGROUND

In this action, plaintiffs Eva Marie Phillips and Greg Phillips (plaintiffs) allege that defendants Phillip Morris USA Inc. and Altria Group, Inc. (defendants)

violated Ohio statutory and common tort law by advertising and selling certain cigarettes as "light" and "low tar," when the cigarettes in question had as much tar and nicotine as defendants' regular line of cigarettes. Specifically, plaintiffs claim that "[w]hile promoting decreased tar and nicotine deliveries, [d]efendants designed Marlboro Light cigarettes to deliver higher levels of tar and nicotine than could be measured by the standard testing apparatus." (Doc. No. 1, Complaint at 4.) According to the complaint, defendants launched a deceptive and unlawful advertising campaign devised to conceal the truth behind the "so-called lowered tar and nicotine deliveries of their products. . . ." (Compl. at 4.)

Plaintiffs raise statutory claims under the CSPA and the DTPA. They also assert common law claims alleging fraud, express and implied warranty violations, and unjust enrichment. (*See* Compl.) Plaintiffs purport to bring these claims in their personal capacities, as well as on behalf of all those similarly situated, and maintain that the damages they seek are economic in nature, and do not include claims for personal injury. (Compl. at 3.) The complaint also contains a request for injunctive relief.

Defendants move for judgment on the pleadings with respect to plaintiffs' statutory claims under the CSPA and the DTPA. Defendants insist that the class component of plaintiffs' CSPA claim must be dismissed because plaintiffs have not pleaded compliance with, nor can they satisfy, the notice requirement of Ohio Rev. Code § 1345.09(B). Defendants also maintain that they are entitled to judgment as a matter of law on plaintiffs' DTPA claim because the Act does not provide for a cause of action for consumers.

**II. STANDARD OF REVIEW**

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings any time after the pleadings are closed, but early enough not to delay trial. The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

**III. DISCUSSION**

*A. Class Actions under the Ohio Consumer Sales Practices Act*

"Ohio's Consumer Sales Practices Act . . . prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 6, 850 N.E.2d 31 (2006) (citing Ohio Rev. Code §§ 1345.02,

3

1345.03). Under the CSPA, a consumer alleging to have been harmed by unlawful sales practices may, "in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." Ohio Rev. Code § 1345.09(A). The CSPA also allows for a class action, provided that the alleged violation:

> was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code . . . .

§ 1345.09(B); *see Volbers-Klarich v. Middletown Mgmt., Inc.*, 125 Ohio St. 3d 494, 502 (2010) (acknowledging the notice requirement for class actions under the Act) (internal citations and quotations omitted); *see, e.g.*, *Marrone*, 110 Ohio St. 3d at 6 ("a consumer may qualify for class-action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)").

The complaint contains no allegation that defendants engaged in conduct that was "substantially similar" to conduct that was found deceptive by an Ohio administrative rule or an Ohio state court decision, as required by Section 1345.09(B) for class actions. Further, in *Marrone*, in an action against cigarette manufactures involving strikingly similar facts relating to advertising for "light" cigarettes, the Ohio Supreme Court found no evidence that the alleged deceptive advertising by the cigarette

4

manufacturers was substantially similar to an act or practice that was previously declared to be deceptive, as required by § 1345.09(B).[1] 110 Ohio St. 3d at 13.

Plaintiffs do not challenge the binding effect of the decision in *Marrone*, nor do they argue that, subsequent to the ruling in *Marrone*, the notice requirement of § 1345.09(B) has been satisfied by a recent ruling or Ohio state court decision. Instead, they argue that their CSPA class claim is governed by the broader dictates of Fed. R. Civ. P. 23, and that they need not satisfy the more specific notice requirement of Ohio Rev. Code § 1345.09(B). Relying on *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431 (2010), plaintiffs argue that because § 1345.09(B) conflicts with Fed. R. Civ. P. 23—the state statute prohibits plaintiffs from maintaining a class that may otherwise meet the prerequisites for class certification under Rule 23—it cannot apply in this diversity action brought in federal court.

In *Shady Grove*, the Supreme Court addressed the conflict between a New York statute that precluded class actions that seek penalties or statutory minimum damages and Rule 23, which generally governs class actions in federal court. In a five-four decision, a majority of the Court determined that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class

---

[1] The similarities are no coincidence. The Court takes judicial notice that in May 2001, plaintiffs brought a state action with claims that were substantially similar to those contained in the present complaint, and sought to certify a class of "all residents of Ohio who purchased and consumed Defendants' Marlboro Lights cigarettes but who do not have a claim for personal injury resulting from the purchase or consumption of cigarettes." (Doc. No. 16-2, State Action Complaint at 243.) This prior action was consolidated with *Marrone v. Philip Morris Companies Inc.*, Case No. 99CIV0954 (Medina Ct. Common Pleas) "for the purpose of conducting discovery on class certification issues and briefing on the class certification question." (*See* Doc. No. 16-3, Order at 273.) By the decision in *Marrone*, the Ohio Supreme Court reversed the court of appeal's decision affirming the trial court's certification of the class under the CSPA. While defendants suggest that plaintiffs' CSPA class claim is also barred by the doctrine of collateral estoppel, defendants do not raise this argument in connection with the present motion for judgment on the pleadings. The Court, therefore, does not reach the issue.

action," and that the New York procedural statute "flatly contradict[s]" Rule 23. 130 S. Ct. at 1437, 1441. In the second part of the opinion, Justice Scalia, writing for himself and only three other justices, found that a federal rule is within the Rules Enabling Act, 28 U.S.C. § 2071 *et. seq.*, and may serve to displace a conflicting state law, if the federal rule is procedural, meaning that it "governs only the manner and means by which the litigants' rights are enforced." *Id.* at 1442 (internal quotation and citation omitted). Justice Scalia concluded that Rule 23 "really regulate[s] procedure" and therefore falls within the Rules Enabling Act because it "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits . . . it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Id.* at 1442-43 (internal quotation omitted).

While Justice Stevens agreed that the state statute conflicted with Fed. R. Civ. P. 23, and concurred in the Court's ultimate ruling, he wrote separately, offering a narrower test for determining the application of the Rules Enabling Act. Specifically, he held that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 1452 (Stevens, J., concurring.) He concluded that "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id.*

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the

narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Greg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)); see *United States v. Cundiff,* 555 F.3d 200, 209 (6th Cir. 2009) ("the 'narrowest' opinion refers to the one which relies on the 'least' doctrinally 'far-reaching-common ground' among the Justices in the majority"). In the wake of *Shady Grove*, a clear majority of courts have applied Stevens's narrower holding as the controlling opinion for use in determining whether a federal rule may displace a conflicting state law. *See*, *e.g.*, *Leonard v. Abbott Lab. Inc.*, 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *12 (E.D. N.Y. Mar. 5, 2012) (collecting cases); *Jones v. Corr. Medical Servs., Inc.*, 845 F. Supp. 2d 824, 853 (W.D. Mich. 2012) (same); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 660-1 (E.D. Mich. 2011) (same); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC (ANx), 2011 WL 1832941, at *8 (C.D. Cal. May 12, 2011) ("Here, Justice Stevens's concurring opinion properly can be viewed as . . . 'narrower' than the other holdings") (internal quotation and citation omitted); *McKinney v. Baye Corp.*, 744 F. Supp. 2d 733, 747 (N.D. Ohio 2010) ("Because Justice Stevens'[s] concurring opinion would permit some state law provisions addressing class actions—whereas Justice Scalia's opinion . . . would broadly prohibit any state law that conflicted with Rule 23—Justice Stevens'[s] opinion is the narrowest and, thus, controlling opinion."); *Bearden v. Honeywell Int'l Inc*., No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) ("applying Justice Stevens's approach").

Employing Justice Stevens's "intertwined" test, every court to reach the question has concluded that the CSPA's notice requirement is not displaced by Fed. R. Civ. P. 23. *See*, *e.g.*, *Leonard*, 2012 WL 764199, at *13; *McKinney*, 744 F. Supp. 2d at

747-9; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, Case No. 1:08-WP-65000, 2010 WL 2756947, at *2 (N.D. Ohio July 12, 2010); *see also Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 693 (S.D. Ohio 2012) (holding, without specific reference to *Shady Grove*, that the class action limitation in Ohio Rev. Code § 1345.09(B) applies to CSPA class claims).

For example, in *Whirlpool*, a case from this judicial district, the court found that the application of Rule 23 to the plaintiffs' claim under the CSPA would impermissibly "'abridge, enlarge, or modify [Ohio's] rights or remedies, and thereby violate the [Rules] Enabling Act.'" *Whirlpool*, 2010 WL 2756947, at *2 (quoting *Shady Grove*, 130 S. Ct. at 1457, Stevens, J., concurring). In so ruling, the court reasoned that "[t]he class action restriction in [Ohio Rev. Code] § 1345.09(B) is intimately interwoven with the substantive remedies available under the OCSPA[,]" and application of Rule 23 would, therefore, provide for a right not envisioned by the state legislature. *See id.* (citing *Shady Grove*, 130 S. Ct. at 1456). The court reached a similar conclusion in *McKinney*. There, Judge O'Malley echoed the finding in *Whirlpool* that application of Fed. R. Civ. P. 23 to class claims under Ohio Rev. Code § 1345.09(B) is ultra vires under the Rules Enabling Act because it would " 'abridge, enlarge, or modify' Ohio's rights and remedies . . . ." 744 F. Supp.2d at 748-9 (citing *Whirlpool*, 2010 WL 2756947, at *2).

Applying such an analysis, courts have upheld similar state laws that restrict, in one fashion or another, the availability of class actions. *See*, *e.g.*, *Tait*, 2011 WL 1832941, at *9 (Tennessee Consumer Protection Act, which limits claims to "individual" actions was "so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights.") (internal quotation and citation

8

omitted); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010) (Illinois antitrust law restricting indirect purchaser claims to those brought by the state attorney general was "distinguishable from the provisions addressed in *Shady Grove*.")

While conceding that the test announced by Justice Stevens in his concurring opinion controls the analysis here, plaintiffs posit that Justice Stevens would have reached the same conclusion he (and the majority) did with respect to the New York law.[2] In so arguing, plaintiffs suggest that the restriction found in Ohio Rev. Code § 1345.09(B), is "almost identical" to the New York statute at issue in *Shady Grove*, with one of the only meaningful differences being that the Ohio statute only applies to claims under the CSPA, while the New York statute applies to all class actions brought in state court in Ohio.[3] (Doc. No. 20 at 496.) Plaintiffs misunderstand the significance of this distinction.

In *Shady Grove,* Justice Stevens underscored the fact that the New York statute applied to all class claims brought in New York courts, including those based on federal law or the laws of other States. 130 S. Ct. at 1457 (Stevens, J., concurring).

---

[2] Plaintiffs do cite cases that they believe employ an analysis that more closely resembles the test announced by Scalia (and joined by three other justices) in *Shady Grove*. (*See* Doc. No. 20, Opposition Brief at 491-93.) These opinions offer little guidance. None of these cases addressed the treatment of Supreme Court's "fractured decision," and none involved the notice requirement of Ohio Rev. Code § 1345.09(B). Further, several of the decisions discuss the analysis in only the broadest of terms. *See*, *e.g.*, *In re Katrina Canal Beaches Litig.*, 401 F. App'x 884, 887 (5th Cir. 2010) (observing that, generally, federal procedural rules govern over state rules of procedure in actions brought in federal court); *Costal Conserv. Ass'n v. Locke*, 2010 WL 1407680, at *1-*2 (M.D. Fla. 2010) (citing *Shady Grove's* plurality for its general comparison of procedural and substantive rules). Ultimately, the Court agrees with the majority of courts that have concluded that Stevens's concurring opinion in *Shady Grove* controls. *See Leonard*, 2012 WL 764199, at *12 (collecting cases from the "majority of district and circuit courts that have found Justice Stevens concurring opinion was on the 'narrowest grounds'. . . .")

[3] Plaintiffs also note that the New York statute at issue in *Shady Grove* limited certain statutory damages in class actions, while Ohio Rev. Code § 1345.09(B) requires notice before any damages can be sought by a class. (Doc. No. 20, Opposition Brief at 496.) However, they fail to explain how this distinction has any bearing on defendants' motion.

Because the state law painted with such broad and even strokes, Stevens found that "[i]t was hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id.* Following *Shady Grove*, courts have looked to whether the state law in question applies to all claims, or whether its reach is limited to certain claims, as an indication of whether it substantially impacts state substantive rights. *See*, *e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) (applying Illinois class-action limitation, noting that it "is not contained in a generally applicable procedural rule but, rather, in the same paragraph of the same statute that creates the underlying substantive right"); *Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d at 677 (relying in part on the fact that the state statutory restriction on indirect purchaser actions was "incorporated in the same statutory provision as the underlying right, not a separate procedural rule").

The fact that the notice provision in § 1345.09(B) is limited to actions under the CSPA suggests that it was not merely intended by the state legislature to function as a procedural rule to govern class actions. Moreover, the fact that this limitation is contained within the very statute that provides consumers with an avenue for relief from unfair sales practices demonstrates that it impacts substantive rights. *See Leonard*, 2012 WL 764199, at *13 (drawing attention to the fact that the notice provision "applies only to 'a violation of Chapter 1345 of the [Ohio] Revised Code'—indicating its substantive nature") (quoting *Whirlpool*, 2010 WL 6298271, at *3-*4); *Bearden*, 2010 WL 3239285, at *10 ("Unlike in *Shady Grove*, the limitation here [Ohio Rev. Code § 1345.09(B)] is contained in the substantive statute itself, not in a separate procedural rule.") Thus, the Court concludes that the notice provision in § 1345.09(B) is so

10

"intertwined" with state substantive rights that it serves to define the scope of the rights afforded under the CSPA.[4] Because plaintiffs have not alleged (and cannot allege) that their class claim under the CSPA meets the notice requirement of § 1345.09(B), defendants' motion for judgment on the pleadings as to this portion of plaintiffs' CSPA claim is granted.

### B.  *Consumer Claims under the Ohio Deceptive Trade Practices Act*

Plaintiffs allege that defendants violated the Ohio Deceptive Trade Practices Act by "making deceptive and unfair representations [regarding their low tar cigarettes] and by falsely and deceptively representing that their" cigarettes: had qualities they did not have; were new when, in fact, they were reconditioned or reclaimed; were of a particular quality, when they were not; and delivered less tar and nicotine, which was not true. (Compl. at 36.) Plaintiffs do not deny that they bring their DTPA claim as consumers (*see* Compl. at 36 ["Plaintiffs and the Class entered into transactions with the Defendants by purchasing Defendants' Marlboro Lights cigarettes."]), so the question that this Court must answer is whether consumers may pursue a claim under the DTPA.

---

[4] Plaintiffs alternatively urge the Court to look beyond the ruling in *Shady Grove*, and deny defendants' motion by relying upon the Supreme Court's earlier decision in *Sibbach v. Wilson & Co., Inc*., 312 U.S. 1, 61 S. Ct. 422 (1941), which they contend is "**still good law** . . . ." (Doc. No. 20, Opposition Brief at 496, bolding in original.) The Court agrees that *Sibbach* is still good law, but finds that it does not compel a contrary result. As Stevens explained in *Shady Grove*, *Sibbach* did not address "the specific question of 'the obligation of federal courts to apply substantive law of a state.'" *Shady Grove*, 130 S. Ct. at 1454 (quoting *Sibbach*, 61 S. Ct. at 422) (Stevens, J., concurring). The inquiry in *Sibbach* was limited to determining whether the application of federal rules requiring medical exams for litigants pertained to "'substantive rights' under the Enabling Act." *Shady Grove*, 130 S. Ct. at 1454-55 (Stevens, J., concurring). It did not, as Stevens noted, involve the application of state law. *Id.* at 1454. So while *Sibbach* still stands for the proposition that the application of federal rules that are merely procedural does not offend the Rules Enabling Act, it does not offer any guidance as to whether plaintiffs' CSPA class claim may proceed.

The Ohio Supreme Court has not addressed the issue of whether consumers have standing under the DTPA, and there is a split in authority on the subject.[5] *See Robins v. Global Fitness Holdings*, 838 F. Supp. 2d 631, 649-50 (N.D. Ohio 2012) (collecting cases). The vast majority of federal courts and all lower state courts to address the issue have concluded that relief under the DTPA is not available to consumers. *See Holbrook v. Louisiana-Pacific Corp.*, No. 3:12CV484, 2012 WL 3801725, at *4-*5 (N.D. Ohio Aug. 29, 2012); *Robins*, 838 F. Supp. 2d at 650 (collecting cases); *In re Porsche Cars N. Am.*, 880 F. Supp. 2d 801, 874 (S.D. Ohio 2012); *In re Oreck Corp. Halo Vacuum and Air Purifiers, Marketing and Sales Practices Litig.*, No. ML 12-2317 CAS (JEMx), 2012 WL 6062047, at *11 (C.D. Cal. Dec. 3, 2012); *Thorton v. State Farm*, No. 1:06-cv-18, 2006 WL 3359448 (N.D. Ohio Nov. 17, 2006); *Chamberlain v. Am. Tobacco Co. Inc.*, No. 1:96-CV-2005-PAG, 1999 WL 33994451, at *60 (N.D. Ohio Nov. 19, 1999); *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 Ohio 1240, 2006 WL 1061769, at ¶ 25 (Ohio Ct App. 8th Dist. Mar. 16, 2006); *Blankenship v. CFMOTO Powersports, Inc.*, 161 Ohio Misc. 2d 5, 16-7, 944 N.E.2d 769, 778 (2011).[6]

---

[5] Because the highest court in Ohio has not addressed this state law issue, "this Court must attempt to predict what the Ohio Supreme Court would do if presented with this question." *McKinney*, 744 F. Supp. 2d at 750 (citing *Mazur v. Young*, 507 F.3d 1013, 1016-17 (6th Cir. 2007)). In *McKinney*, Judge O'Malley certified to the Ohio Supreme Court the question of a consumer's standing under the DTPA. *Id.* at 752. However, the issue was never addressed by the Ohio Supreme Court because the plaintiff dismissed the DTPA claim. *See Robins*, 838 F. Supp. 2d at 650 n.3.

[6] Plaintiffs suggest that while federal courts continue to find no room for consumer actions under the DTPA, Ohio courts—both before and after the Eighth Appellate District's decision in *Dawson*—have provided for such causes of action. (Doc. No. 24, Opposition Brief at 538-9.) However, none of the cases cited by plaintiffs addressed the issue of standing. As such, they offer no guidance. *See, e.g., Thorton v. State Farm Mut. Auto Ins. Co., Inc.*, No. 1:06-cv-00018, 2006 WL 3359448, at *17 (N.D. Ohio Nov. 17, 2006) (rejecting reliance on similar decisions not addressing consumer standing when dismissing DTPA claim); *see generally State ex rel. United Auto. Aerospace & Argic. Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St. 3d 432, 440, 844 N.E.2d 335, 343 (Ohio 2006) (finding no precedential value to decisions that did not reach the issue that was before the court).

One court out of the Southern District of Ohio, however, has permitted consumer claims under the DTPA. *Bower v. Int'l Bus. Machs., Inc.*, 495 F. Supp. 2d 837 (S.D. Ohio 2004). In *Bower*, the court observed that the DTPA's definition of a "person" who could bring suit under the statute included "an *individual*, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, limited liability company, two or more of any of the forgoing having a joint common interest, or any other legal or commercial entity[,]" and reasoned that there were no restrictions placed on what kind of individual may seek relief under the statute. *Id*. at 842-44 (quoting Ohio Rev. Code § 4165.01(D)) (emphasis in original). Courts rejecting the analysis in *Bower* have focused on the language "*or any other legal or commercial entity,*" as qualifying the entire laundry list of entities that may bring suit, and have suggested that the language implies that the individual must be involved in commercial activity. *See Robins*, 838 F. Supp. 2d at 650 (citing *Chamberlain*, 1999 WL 33994451, at *18 n. 12) (emphasis added); *see also Glassner v. R.J. Reynolds Tobacco Co.*, Case No. 5:99CV0796, 1999 WL 33591006, at *6 (N.D. Ohio June 29, 1999) (Pre-*Bower* case finding no cause of action under the DTPA for consumers, and observing that, in claims under the DTPA, "the parties are virtually always competitors in some line of business.")

Courts have also criticized *Bower* because the opinion "fails to note that Ohio courts look to the Lanham Act when adjudicating claims under the DTPA." *Robins*, 838 F. Supp. 2d at 650. As the court explained in *Blankenship*,

> When adjudicating claims under the DTPA, Ohio courts apply the same analysis applicable under analogous federal law. *Dawson v. Blockbuster, Inc.*, Cuyahoga App. No. 86451, 2006 Ohio 1240, ¶ 23. If claims are

13

asserted under the Ohio common law and R.C. 4165, courts are to apply essentially the same analysis as that applied in assessing [the laws of] unfair competition under the federal statutes. The Ohio DTPA is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising.

At least half of the circuits hold (and none of the others disagree) that § 45 of the Lanham Act, 15 U.S.C. § 1051 et seq., specifically 15 U.S.C. § 1127, *bars a consumer from suing under the act*. According to the United States Court of Appeals for the Second Circuit, § 45 identifies those engaged in commerce as the class of persons to be protected by the act. 15 U.S.C. § 1127. Congress' purpose in enacting § 43(a) of the act was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally, and almost certainly without any consideration of consumer rights of action in particular. *The act's purpose*, as defined in § 45, *is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct.* Other courts have followed the Second Circuit in *denying Lanham act standing to consumers*.

161 Ohio Misc. 2d at 14-15 (emphasis in original; additional quotations and citations omitted); *see also Gascho*, 863 F. Supp. 2d at 698 ("[W]hile an individual may be able to sue a person engaged in deceptive trade practices during the course of his or her commercial activities, *it must be in that individual's capacity as a participant in commercial activity*.") (emphasis added); *Chamberlain*, 1999 WL 33994451, at *18 (holding that "the plain language of the [DTPA] indicates that it applies between business or commercial entities") (citing Ohio Rev. Code §§ 4165.01(D), 4165.02, 4165.03). At least one other case out of the Southern District of Ohio has recently declined to follow *Bower*, finding that "*Dawson* mandated dismissal" of a consumer's DTPA claim. *See In re Porsche Cars N. Am.*, 880 F. Supp. 2d at 874-5 (offering four reasons for rejecting *Bower*: (1) *Dawson* properly acknowledged the similarities between the DTPA and the analogous federal statute, the Lanham Act; (2) *Bower* failed to even mention the Ohio appellate decision of *Dawson* or the Lanham Act; (3) *Bower* ignores the fact that the

14

Lanham Act contains language similar to the DTPA, yet does not provide for a private cause of action for consumers; and (4) at least one other Ohio state court case (*Blankenship, supra*) has refused to follow *Bower*).

Relying on the DTPA's inclusion of an "individual" in the definition of a person who may bring suit, plaintiffs urge the Court, in essence, to follow the decision in *Bower* and find that consumers have standing under the statute. The Court notes, however, that the analogous federal statute, the Lanham Act, contains a similar provision, as it allows for suit by "any *person* who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B) (emphasis added). Notwithstanding language that would appear to allow for suit by persons who could include consumers, it is well settled that consumers lack standing under the Lanham Act. *See Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278, 281 (4th Cir. 2004); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 561 (5th Cir. 2001); *see also Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 229 (3d Cir. 1998) ("Conferring standing to the full extent implied by the text of § 43(a) [of the Lanham Act] would give standing to parties, such as consumers, having no competitive or commercial interests affected by the conduct at issue."); *Blankenship*, 161 Ohio Misc. 2d at 16 (noting that the Lanham Act, like the DTPA, applies to natural persons, as well as corporations, and that it is still "well established that a consumer does not have standing to sue under the [Lanham A]ct for false advertising.") (further citation omitted).

Plaintiffs attempt to distinguish the Lanham Act on the grounds that while the federal statute specifically states that its purpose is "to protect persons engaged in commerce, not individual consumers, against unfair competition[,]" *see Blankenship*, 16

15

Ohio Misc. 2d at 16, the DTPA contains no such statement. The fact that the two statutes are not identical is not fatal to the analysis, as Ohio courts have only required that analogous federal statutes be "substantially similar" before they can be used for guidance on the interpretation of state statutes.[7] *See*, *e.g.*, *Chandler & Assocs. v. Am. Healthcare Alliance, Inc.*, 125 Ohio App. 3d 572, 709 N.E.2d 190, 195 (Ohio Ct. App. 8th Dist. 1997). In fact, in light of the substantial similarities between the Lanham Act and the DTPA, courts have relied on the stated purpose in the Lanham Act in interpreting the DTPA. *See*, *e.g*, *Robins*, 838 F. Supp. 2d at 650; *Dawson*, 2006 WL 1061769, at *9-*11

Further evidence of the state legislature's intended purpose in passing the DTPA can be gleaned from its subsequent passage of the CSPA. As set forth above, the CSPA is clearly directed at consumers and "prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions." *Marrone*, 110 Ohio St. 3d at 6 (2006); *see* Ohio Rev. Code § 1345.09 ("For a violation of Chapter 1345 of the Revised Code, *a consumer* has a cause of action and is entitled to relief . . . .") (emphasis added). It is for this reason that courts have held that "to confer standing on consumers under the DTPA would render the CSPA superfluous as both statutes regulate the same type of

---

[7] The Lanham Act and the DTPA contain many similarities. For example, the Lanham Act proscribes false statements likely "to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person[.]" 15 U.S.C. § 1125(a)(1)(A). The DTPA similarly proscribes representations "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have[.]" Ohio Rev. Code § 4165.02(A)(7).

16

conduct."[8] *Robins*, 838 F. Supp. 2d at 650 (citing *McKinney*, 744 F. Supp. 2d at 752); *see Leonard*, 2012 WL 764199, at *14; *Blankenship*, 161 Ohio Misc. 2d at 17; *see*, *e.g.*, *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 288, 834 N.E.2d 791, 801 (2005) (refusing to allow a consumer to pursue a CSPA claim for anticompetitive injury because "[t]he legislature created separate statutory schemes for antitrust issues and for consumer sales practices").

The Court finds the analysis employed by *Dawson*, *Blankenship* and the previously mentioned federal decisions interpreting the DTPA compelling, and further finds plaintiffs' attempts to distinguish these cases unpersuasive. As such, the Court holds that consumers lack standing to bring claims under the DTPA and, therefore, defendants are entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

For all of the foregoing reasons, defendants' motion for partial judgment on the pleadings on the class component of plaintiffs' CSPA claim and their motion for

---

[8] Plaintiffs argue that the DTPA and the CSPA do not cover the same conduct. According to Plaintiffs, the DTPA covers conduct leading up to the transaction whereas the CSPA covers conduct that occurs "before, during, or after the consumer transaction." (Doc. No. 24, Opposition Brief at 539.) If anything, this argument cuts against plaintiffs' interpretation of these statutes. While the DTPA was promulgated to address anti-competitive activity in commercial transactions, the language of the CSPA makes clear that it was passed to provide relief for consumers who are affected by these practices. *See* Ohio Rev. Code § 1345.09(A) ("Where the violation was an act prohibited by section 1345.02, 1345.03, 1345.031 of the Revised Code, *the consumer may*, in an individual action, rescind the transactions or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." ) (emphasis added).

judgment on the pleadings on plaintiffs' DTPA claim are granted. Plaintiffs' class CSPA claim and their DTPA claim are dismissed with prejudice.

                **IT IS SO ORDERED**.

Dated: March 21, 2013

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**