# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EVA MARIE PHILLIPS, | ) | CASE NO.  5:10CV1741 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| PHILIP MORRIS COMPANIES INC., | ) | |
| nka ALTRIA GROUP, INC., et al., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Philip Morris USA Inc. ("PM USA") for judgment on the pleadings. (Doc. No. 47.) Plaintiff opposes the motion (Doc. No. 60), and defendant filed a reply. (Doc. No. 62.) Also before the Court is plaintiff's motion for class certification. (Doc. No. 82.) Defendant has filed an opposition (Doc. No. 85), and plaintiff has replied. (Doc. No. 87.) On October 30, 2013, the Court held a hearing on the motion for class certification, and, at the conclusion of the hearing, the Court took that matter under advisement.

## I. BACKGROUND

In this action, plaintiff Eva Marie Phillips[1] alleges that defendant Philip Morris USA Inc.[2] ("PM USA") violated Ohio statutory and common tort law by advertising and selling cigarettes represented to be "Light" and as having "Low Tar", or

---

[1] On May 21, 2013, plaintiff Greg Phillips was voluntarily dismissed from this action. (Doc. Nos. 51, 56.)
[2] Defendant Altria Group, Inc. was voluntarily dismissed on November 5, 2013. (Doc. Nos. 92, 94.)

"Lowered Tar & Nicotine" when, in fact, the cigarettes in question had as much tar and nicotine as PM USA's regular line of cigarettes. (Complaint, Doc. No. 1 at ¶¶ 5-6.)

According to the complaint, in the wake of emerging evidence on the dangers of cigarette smoking in the late 1960's, cigarette manufacturers introduced "light" cigarettes to the public. (Doc. No. 1 at ¶ 5.) PM USA sold its version of light cigarettes in Ohio and throughout the United States under the brand name "Marlboro Lights." (*Id*. at ¶ 4.) These light cigarettes promised to deliver less tar and nicotine than full flavored cigarettes, and plaintiff suggests that PM USA was banking on the public believing that this new product represented a safer and healthier smoking option. (*Id*. at ¶¶ 5-6.) In theory, these lower levels of harmful toxins were possible due, in part, to the microscopic holes in the cigarettes that would allow more tar and nicotine to escape into the air. (*Id*. at ¶¶ 36-37.)

Following the introduction of light cigarettes, the Tobacco Institute Testing Laboratory ("TITL") began testing light cigarettes by using the Cambridge Filter System, whereby a machine attempted to mimic the act of smoking light cigarettes. (Doc. No. 1 at ¶¶ 31, 40; Declaration of Peter Valberg, Ph.D., Doc. No. 85-10 at ¶ 20.) This became known as the "FTC Method" because it was adopted by the Federal Trade Commission for testing the claims of manufacturers of light cigarettes. (Doc. Nos. 85-8, 85-9; Doc. No. 85-10 at ¶¶ 20-21.) By the FTC Method, the "inhaled" material was collected and analyzed to determine the amount of tar and nicotine that a smoker was believed to consume. (Doc. No. 1 at ¶ 40.) While the testing apparatus consistently registered lower tar and nicotine levels for light cigarettes than those found in traditional

cigarettes, plaintiff suggests that the methodology was flawed because it did not take into account the fact that real smokers often unknowingly cover up the ventilation holes with their fingers and lips. Plaintiff maintains that PM USA was aware of the limitations of this testing method, and intentionally designed its light cigarettes to register artificially favorable testing measurements while in actuality still delivering as much if not more tar and nicotine to its customers. (*Id.* at ¶¶ 6, 8; Doc. No. 82-1 at 2655.)

Plaintiff further alleges that PM USA designed its light cigarettes in such a way that, even if consumers were able to avoid covering the ventilation holes, they would still be able to receive the same amount of tar and nicotine that they received with traditional cigarettes. Through a phenomenon known as "compensating," consumers are subconsciously able to increase their tar and nicotine levels by increasing the puff volume or frequency, smoking more cigarettes, and smoking each cigarette longer. (Doc. No. 1 at ¶ 44; Doc. No. 85-10 at ¶¶ 2, 28; Declaration of Janette Greenwood, Ph.D., Doc. No. 85-17 at Section III, ¶ 19.) Plaintiff asserts that PM USA was aware that consumers tended to compensate when they smoked light cigarettes but intentionally withheld this information from the public.[3] (Doc. No. 1 at ¶ 45.)

On August 9, 2010, plaintiff filed the present action. This action was originally consolidated with multi-district litigation ("MDL") proceedings in the District of Maine. (Doc. No. 85-29.) After analyzing several test cases, the MDL court issued an

---

[3] Plaintiff also alleges that, when PM USA lowered the amount of tar found in its cigarettes, it deliberately increased the amount of nicotine "and chemically altered its form so that it would escape detection" under the FTC Method. (Doc. No. 1 at ¶ 48.) The complaint further provides that PM USA utilized chemical additives, reconstituted tobacco, alterations to the size and shape of the cigarette, air dilution, and varied smoke pH levels to deliver the same amounts of tar and nicotine levels undetected by the testing machine. (*Id.* at ¶¶ 50-53.)

opinion denying certification in the exemplar cases, holding that individual issues including injury, causation, damages, and affirmative defenses defeated the predominance and superiority requirements found in Fed. R. Civ. P. 23(b)(3). *In re Light Cigarettes Mktg. Sales Practices Litig*., 271 F.R.D. 402, 405 n.2 (D. Me. 2010). Following the First Circuit's denial of interlocutory review, plaintiff obtained a remand to this Court. *In re Light Cigarettes Mktg. Sales Practices Litig*., 856 F. Supp. 2d 1330 (J.P.M.L. 2012).

Plaintiff's complaint contained statutory claims under the Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345.01 *et seq*., and the Ohio Deceptive Trade Practices Act ("DTPA"), Ohio Rev. Code § 4165.01 *et seq*. Plaintiff also raised common law claims alleging fraud, express and implied warranty violations, and unjust enrichment. (Doc. No. 1.) In a memorandum opinion and order, dated March 21, 2013, the Court dismissed a portion of plaintiff's CSPA claim, and dismissed plaintiff's DTPA in its entirety. (Doc. No. 44.) By its motion for judgment on the pleadings, PM USA seeks dismissal of the class component of plaintiff's common law fraud and unjust enrichment claims. (*See* Doc. No. 47.)

Plaintiff does not seek to recover damages for any personal injuries that might have resulted from her use of PM USA's light cigarettes. (Doc. No. 1 at ¶ 3.) Rather, she limits her economic recovery to recouping the purchase price of the cigarettes, suggesting that she did not receive what she paid for, namely, cigarettes with lower tar and nicotine. Plaintiff believes that PM USA unjustly profited from marketing its cigarettes as offering lower tar and nicotine, without delivering a product that lived up

4

to the advertisements. She asks the Court to order PM USA to refund the purchase price or disgorge all revenue it received through the sale of these cigarettes. She further seeks an injunction to compel PM USA to adequately warn consumers of the dangers of smoking light cigarettes.[4] (Doc. No. 1 at ¶ 10.)

Plaintiff brings this action on her own behalf, and on behalf of other similarly situated consumers of PM USA's light cigarettes.[5] Specifically, she seeks to certify the following class:

> all persons who purchased [PM USA's] Marlboro Lights Lowered Tar & Nicotine cigarettes in Ohio for personal consumption from the first date [PM USA] placed [its] Marlboro Lights Lowered Tar & Nicotine cigarettes into the stream of Ohio commerce, up to September 23, 2003.

(Doc. No. 82 at 2644.) PM USA opposes class certification, maintaining that the diversity within the class as to whether, and to what extent, each consumer relied on the representations on the cigarette boxes, and the manner in which each consumer used the product and compensated for the reduced amount of tar and nicotine, renders class certification an ineffective vehicle for resolving the present dispute.

## II. LAW OF THE CASE

Plaintiff argues that the class certification inquiry is foreclosed by a 2003 state court ruling in the predecessor case certifying a similar class. A review of the procedural history in the predecessor state case is, therefore, necessary to provide

---

[4] At the hearing on class certification, plaintiff's counsel suggested that it was unlikely that his client could obtain an injunction because the Food and Drug Administration ("FDA") had already taken action similar to that sought in the complaint. (Hearing Transcript, Doc. No. 100 at 5313.)

[5] Plaintiff originally filed her class certification motion on August 26, 2013 (Doc. No. 79), and filed the exhibits to her motion separately. (Doc. No. 80.) On August 29, 2013, the Court granted plaintiff leave to re-file her motion with attached exhibits. This re-filed motion was filed on August 30, 2013. (Doc. No. 82.)

context. The original state court action was filed in the Medina County Court of Common Pleas. On September 23, 2003, the trial court certified a similar class only with respect to the claim under the CSPA. *Marrone v. Phillip [sic] Morris, USA, Inc*., No. 99-CIV-0954, 01-CIV-0413, 2003 WL 22925081 (Ohio Ct. Cm. P., Medina County, Sept. 23, 2003). PM USA took an interlocutory appeal of the certification, and the plaintiffs[6] cross-appealed the failure to certify the fraud claims. On September 15, 2004, the court of appeals affirmed the trial court's decision, finding that the CSPA claim arose from the same alleged misrepresentations relating to the attributes of light cigarettes manufactured by defendant, and that the trial court properly refused to certify the fraud claims. *Marrone v. Phillip [sic] Morris, USA*, No. 03ca0120-M, 2004 WL 2050485 (Ohio Ct. App. Sept. 15, 2004). The Ohio Supreme Court reversed, finding that the CSPA claim could not be maintained as a class action because defendant was not on prior notice that its alleged acts were deceptive and unconscionable, as is required under the CSPA for class certification. *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 850 N.E.2d 31 (2006). Consequently, the class was decertified, and the predecessor action was dismissed without prejudice. Ultimately, the action was re-filed in this Court.

Relying on Ohio law, plaintiff argues that the law of the case is that the class at issue has already been certified, and that this Court should give full weight and credit to that ruling. While plaintiff acknowledges that the state trial court's certification order was ultimately overturned by the Ohio Supreme Court, she underscores the fact that this ruling went to the notice requirement of the CSPA, not the Rule 23 technical

---

[6] Greg Philips and Catherine Marrone joined Eva Phillips as plaintiffs in this state court action.

6

requirements for class treatment. According to plaintiff, the findings under Ohio Rule 23, a rule similar to its federal counterpart, remain.

There are several reasons why plaintiff's position is unsound. First, the very order plaintiff seeks to enforce was reversed, and the first action was voluntarily dismissed. "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel." *State v. Lowe*, No. 82893, 2004 WL 170397, at *2 (Ohio Ct. App. Jan. 29, 2004) (quoting *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212 (6th Cir. 1989)) (further quotation omitted).

Second, "any judicial rulings made prior to the [voluntary] dismissal cannot be used to bar a later action on the grounds of res judicata . . . ." *Wilson v. Marino*, 164 Ohio App. 3d 662, 671, 757 N.E.2d 820 (Ohio Ct. App. 2005). Plaintiff cites to *Rosser v. Terminix*, 143 Ohio App. 3d 157, 757 N.E.2d 820 (Ohio Ct. App. 2001), and *Shimko v. Lobe*, 152 Ohio App. 3d 742, 790 N.E.2d 335 (Ohio Ct. App. 2003), but in both cases the order in question was not reversed prior to the voluntary dismissal and re-filing. Additionally, in *Marrone*, the state trial court only permitted certification of the CSPA claim, and this Court has already dismissed the CSPA claim from the present suit; thus, the same issues were not in play in the prior action. Class certification depends, in part, on the elements of the claims that must be proven by each class member. Plaintiff's current claims are more akin to the fraud claims that the state courts refused to certify for class treatment.

Also problematic for plaintiff is the fact that the lower state court

7

decisions appear to have been based on a less stringent standard. For example, the state court of appeals required only a solitary common issue for predominance, while federal law would require more than one shared issue. *See Wal-Mart Stores, Inc. v. Dukes*, --U.S.--, 131 S. Ct. 2541, 2566, 180 L. Ed. 2d 374 (2011) (Ginsburg, J., dissenting) ("Rule 23(b)(3) requires some decisive degree of similarity across the proposed  class because it speaks of common 'questions' that 'predominate' over individual ones.") (internal quotation omitted). Additionally, while the state court of appeals did not require plaintiff to offer evidentiary support for her certification arguments, a federal plaintiff must come forward with evidentiary support. *See Comcast Corp. v. Behrend*, -- U.S. --, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013).

Finally, it is well settled that review under Fed. R. Civ. P. 23 requires a "rigorous analysis" of the relevant factors. *Dukes*, 131 S. Ct. at 2551; *see Daffin v. Ford Motor Co*., 458 F.3d 549, 553 (6th Cir. 2006). Yet, the trial court's ruling—which the state appellate court appears to have afforded deference—provided absolutely no analysis, at all, literally reciting the elements of Ohio's rule and nothing more. In short, there are a multitude of reasons why the state trial court's brief certification of a similar class cannot be considered the law of *this* case.

### III. CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

A.    *Federal Procedural Law Governs*

The Court turns to the merits of plaintiff's class certification motion. Plaintiff relies on Ohio's Rule 23 to support her request for class certification. However, federal courts must apply Federal Rule of Civil Procedure 23 when determining whether

to certify a claim—even a claim arising under state law. *In re Welding Fume Prods. Liab. Lit.*, 245 F.R.D. 279, 307-08 (N.D. Ohio 2007) ("Under the *Erie* doctrine, federal courts sitting in diversity must apply state substantive law and federal procedural law. Thus, this Court must apply Federal Rule of Civil Procedure 23 (as construed by federal courts) to determine whether certification of a class of plaintiffs bringing state-law . . . claims (as construed by state courts) is appropriate.") (internal quotation omitted).

      B.    *Standard of Review*

      To obtain class certification under federal law, the plaintiff must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal quotation omitted).

      In addition to fulfilling the prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). Plaintiff attempts to establish the appropriateness of certification under Rule 23(b)(3). Under this subsection, class certification will only be appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members[,]" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3); *see In re*

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 722 F.3d 838, 850 (6th Cir. 2013), *cert. denied*, 2014 WL 684065 (Feb 24, 2014). Plaintiff carries the burden of proving that the factors are met, and must demonstrate the Rule 23(b) factors "through evidentiary proof." *Comcast*, 133 S. Ct. at 1432.

   While class action certification does not go to the merits of the litigation, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied. *Wal-Mart*, 131 S. Ct. at 2551-52. As such, "it 'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question[.]'" *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551).[7]

   C. *Prior Litigation in this Area*

   Plaintiff's motion does not take this Court into uncharted waters. Prior courts have considered class certification of state claims challenging warnings similar to

---

[7] Following briefing and the motion hearing, the parties filed a series of "notices" of supplemental authority. (Doc. Nos. 95, 97, 101, 103.) In plaintiff's January 30, 2014 notice, plaintiff cites a recent report of the Surgeon General, and highlights the report's conclusions that the risk of developing adenocarcinoma from cigarette smoking has increased since the 1960s, and that the tobacco industry fraudulently misled the public as to the risks of smoking light cigarettes. (*See* Doc. No. 103 at 5355-56.) PM USA challenged the filing, insisting that the referenced report does not help plaintiff meet her burden on class certification. (Response, Doc. No. 104.) Plaintiff responded by submitting expert reports prepared in other cases, in which the experts indicated that they relied upon the Surgeon General's report in concluding that PM USA's light cigarettes are more dangerous than its full flavored cigarettes. (Reply, Doc. No. 105 at 6363.) PM USA moved to strike the expert reports. (Doc. No. 106.) Defendant's motion to strike is well taken for several reasons. First, class certification discovery has been closed for more than one year, and the Court held the motion hearing more than three months ago. Second, the experts were retained by other litigants in separate litigations. This Court specifically held that it would only consider expert reports prepared in connection with this litigation, *see* Minutes from October 19, 2012 telephonic Case Management Conference, and such reports would represent inadmissible hearsay that could not be relied upon by plaintiff to support class certification. *See Unger v. Amedisys, Inc.,* 401 F.3d 316, 319 (5th Cir. 2005) (certification must be based on "adequate admissible evidence"); *see also Comcast*, 133 S. Ct. 1432 (requiring plaintiff to come forward with "evidentiary proof" to support class certification). Finally, both the Surgeon General's report—and the expert reports that rely upon it—address the merits of the underlying action and do not go to the issues implicated by plaintiff's class certification motion. For all of these reasons, PM USA's motion to strike is GRANTED.

those given by PM USA relative to its light and low tar cigarettes. The majority of the courts to have decided the issue—including every federal court that has been asked to consider certification under Fed. R. Civ. P. 23—has rejected class certification. *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008); *Cabbat v. Philip Morris USA, Inc.*, Civil No. 10-162 DKW/BMK, 2014 WL 32172 (D. Haw. Jan. 6, 2014); *Wyatt v. Philip Morris USA, Inc.*, No. 09-C-0597, 2013 WL 4046334 (E.D. Wis. Aug. 8, 2013*); Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289 (N.D. Ill. 2010); *Light Cigarettes*, 271 F.R.D. at 413 (collecting cases); *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668 (D. Kan. 2007); *but see Miner v. Philip Morris Companies Inc.*, No. CV 2003-4661 (Ark. Cir. Ct. Oct. 22, 2013) (certifying a class under Arkansas law) (Doc. No. 97 and Atts.).

Plaintiff acknowledges the weight of authority counseling against class certification of such claims. She insists, however, that these cases are not dispositive of the question of class certification in this case, and that there are factual and legal differences between her claims and those raised in previous litigation that warrant a different result here.[8] The Court quite agrees that the law and the facts of this case must govern whether class certification is appropriate here. Still, the Court finds many of the prior cases instructive and will draw guidance from them wherever appropriate.

---

[8] As will be addressed *infra*, plaintiff also urges the Court to find that the intervening decision in *Whirlpool* changes the analysis that the Court must employ in ruling on the question of class certification.

## IV. Rule 23(a) Factors

The Court begins with the Rule 23(a) factors. At the hearing, the parties agreed that not all of the Rule 23(a) factors are in dispute. Indeed, PM USA has focused most of its arguments on the "predominance" and "superiority" inquiry mandated by Fed. R. Civ. P. 23(b)(3). Nonetheless, because the Court must employ a rigorous analysis of all factors, the Court will address each factor, touching only briefly on the ones for which there is little disagreement between the parties.

### A.     Numerosity

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members would be impracticable. Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). In addition, the numerosity requirement is satisfied where the exact size of the class is not known, but general knowledge and common sense indicate that the class is large. *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich.), *aff'd*, 383 F.3d 495 (6th Cir. 2004). In her complaint, plaintiff suggests that the class is comprised of "at least tens of thousands of persons," and common sense would seem to dictate that the potential class may be even larger than plaintiff's good faith estimation. (Doc. No. 1 at ¶ 22.) Courts have consistently found classes similar in size to the one proposed by plaintiff to be sufficiently numerous to make joinder impracticable. *See Daffin*, 458 F.3d at 552 (recognizing that "substantial numbers usually satisfy the numerosity requirement") (internal quotation omitted); *see, e.g., Whirlpool*, 722 F.3d at 852 (putative class numbering in the "thousands" sufficient); *Light Cigarettes*, 271

F.R.D. at 414 (putative class of "thousands of members" satisfied the numerosity requirement). Plaintiff has met her burden as to numerosity.

### B. Commonality

It is well settled that "there need only be one question common to the class[,]" so long as the resolution of that question "will advance the litigation." *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) (en banc). Plaintiff argues that the warranties and representations, along with the information that was withheld, are uniform across the class as the same statements were contained on each package of cigarettes. While this fact, alone, may not be sufficient to satisfy the more demanding predominance standard, the common conduct of PM USA satisfies the less demanding Rule 23(a) commonality requirement. *See, e.g., Cleary*, 265 F.R.D. at 292.

### C. Typicality

"A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc*., 75 F.3d at 1069, 1082 (6th Cir. 1996)). According to plaintiff, she is typical of the class, which is comprised of people who purchased PM USA's lights and lowered tar cigarettes for personal consumption in Ohio.

While PM USA reserves its arguments for predominance, other courts in light cigarettes litigation have found typicality lacking. In *Cleary*, the court noted that the plaintiff's suggestion that she was typical because she relied on the defendant's representations was insufficient to satisfy typicality because claims, such as unjust

13

enrichment, require proof that each plaintiff was harmed by the cigarette manufacturer's allegedly wrongful conduct. The court found that it was possible that potential class members had purchased the light cigarettes for reasons unrelated to their promise of lower tar and nicotine, and that these consumers realized the benefit that they sought. As such, "the likelihood that some significant proportion of class members experienced no injury at all," defeated the named plaintiff's representation that her claims were typical of the class. *Cleary*, 265 F.R.D. at 293; *but see Benedict*, 241 F.R.D. at 673 (finding typicality met where all of the claims were based on the same legal theory and the same allegedly deceptive conduct of defendants with regard to the design and marketing of the light cigarettes).

> D.     *Adequacy of Representation*

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment." *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D. Ohio 2002). To assess the adequacy of the representation, the Court must consider whether the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two prongs to this inquiry: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted).

The Court has no reason to question the adequacy of the class representative. Plaintiff falls within the class she hopes to represent, and there is every

indication that she is willing and able to vigorously represent the interests of the class.[9] Additionally, the Court finds that class counsel is adequate. Current class counsel is clearly qualified to litigate a class action of this nature. Counsel has considerable experience with this type of representation and has demonstrated a willingness to diligently pursue the claims of the putative class members. This factor is also satisfied.

### V. Rule 23(b)(3) Predominance and Superiority

While the Court finds that the Rule 23(a) factors are arguably met, this does not end the inquiry, and, in fact, PM USA directs most of its arguments to the predominance and superiority requirements of Rule 23(b)(3). The predominance requirement is far more exacting than the Rule 23(a) analysis, and requires a showing that common issues predominate over individual ones. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("predominance criterion is far more demanding").

#### A. *Differences in Compensation Lead to Different Injuries*

A fundamental requirement for class certification is that the plaintiff is able to show that she and the absent class members have suffered the same injury. *Dukes*, 131 S. Ct. at 2550 ("In order to justify a departure from [the rule that litigation is conducted by named parties only], a class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (internal

---

[9] Though PM USA does not argue this point, it is true that plaintiff's proposed class action would leave individual class members' personal injury claims, if any, unresolved. The Maine district court managing the MDL cases, of which the present action was one, noted this potential shortcoming of the various proposed classes, but the court observed that individual class members with personal injury actions could protect these interests by opting out of the class. *Light Cigarettes*, 271 F.R.D. at 415.

quotation omitted); *Whirlpool*, 722 F.3d at 860 ("liability issues relating to injury must be susceptible of proof on a classwide basis to meet the predominance standard"). Plaintiff's warranty claims are founded on the theory that the class members did not receive what they bargained for: cigarettes with less tar and nicotine. To recover under this theory, each class member will have to prove that she actually failed to receive the promised reduced amounts of tar and nicotine. *See Hoffer v. Cooper Wiring Devices, Inc*., Case No. 1:06CV763, 2007 WL 1725317, at *6 (N.D. Ohio June 13, 2007) (collecting cases providing that a breach of warranty claim under Ohio law requires the existence of an actual injury); *see also Kehoe Component Sales Inc. v. Best Lighting Prods., Inc*., 933 F. Supp. 2d 974, 1003 (S.D. Ohio 2013) (noting that a breach of warranty claim requires proof that the product failed to perform as warranted). Ohio courts have repeatedly rejected warranty claims where the plaintiff suffered no injury because the consumer received what was warranted.[10] *See, e.g., Hoffer*, 2007 WL 1725317, at *6 (warranty claim sounding in tort failed where plaintiff did not allege he personally experienced the alleged warranty breach associated with defendant's product); *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App. 3d 270, 714 N.E.2d 934, 949-50 (Ohio Ct. App. 1998) (express warranty claim was not actionable where product performed as warranted).

PM USA's expert, Dr. Peter Valberg, relied on his review of numerous

---

[10] Similarly, plaintiff's unjust enrichment claim will require proof that PM USA unjustly retained the benefit of the bargain without delivering on the promise. *See Hambleton v. R.G. Barry Corp*., 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984) (setting forth the elements of unjust enrichment). Under Ohio law, it would not be "unjust" for sellers to retain the profits for a product that performed as promised. *See, e.g., Becker v. Cleveland Browns Football Co., Inc*., No. 35169, 1976 WL 191104, at *2 (Ohio Ct. App. Sept. 30, 1976) (plaintiff is "not entitled to compensation on the ground of unjust enrichment" where plaintiff "received the season tickets he bargained for[.]")

published studies evaluating the smoking behaviors of consumers who switched to light cigarettes in forming his opinions. He found that the "overwhelming majority of smokers exhibited less than complete compensation[.]" (Doc. No. 85-10 [CD manually filed and maintained by Clerk of Courts] at ¶¶ 57-58.) For these smokers, their less than complete compensation translated into a corresponding decrease in the amount of tar and nicotine they inhaled, as compared to the full flavored cigarettes they had previously smoked.[11] (*Id.* at ¶¶ 29, 75-102.) Dr. Valberg also discovered that the degree of compensation by these smokers was "highly variable[,]" with results ranging from near 100% compensation to less than 50% compensation. (Doc. No. 85-10 at ¶ 58.) At the motion hearing, even plaintiff's counsel conceded that within the putative class there will be consumers who actually decreased their tar and nicotine intake by switching from regular cigarettes to Marbolo Lights. (Doc. No. 100 at 5263-64.)

The fact that a significant percentage of the putative class may have received the benefit of the bargain—namely, a cigarette that delivered lower tar and nicotine—creates a problem for class certification. "A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant[.]" *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2013) (citing, among authority, *Romberio v. Unumprovident Corp.*, 385 F. App'x 423 (6th Cir. 2009)). If a smoker did not fully compensate, he will not have been damaged by PM USA's alleged warranty breaches. *See Benedict*, 241 F.R.D. at 680 (observing that if a

---

[11] Dr. Valberg also relied upon two peer-reviewed studies that found that most or all of the test subjects received less nicotine after switching to Marlboro Lights. (Doc. No. 85-10 at ¶¶ 60-61.)

17

consumer received less nicotine and tar, he suffered no injury); *Light Cigarettes*, 271 F.R.D. at 416 (smokers who "did not fully compensate" "were not injured by the misrepresentations because they received lower levels of tar and nicotine"). Yet, the record establishes that "a great number" of class members may have compensated partially or fully.[12] Consequently, the Court finds that the class is overly broad as it may impermissibly "sweep[] within it a large number of persons who were not injured by [PM USA's] conduct[,]" making class certification inappropriate. *See Wyatt*, 2013 WL 4046334, at *3 (citing *Kohen*, 571 F.3d at 677-78).

It will also be impossible to distinguish between the class members who did fully compensate and those who did not without conducting individualized hearings on the smoking habits and practices of the members of the putative class. (Doc. No. 85-10 at ¶ 30 ["Whether, when, and how much a specific smoker compensates can only be determined based on information about the individual smoker."]) Consequently, whether each class member was damaged—and thereby has a cognizable claim—will require "an individual inquiry that cannot be proven on a class-wide basis."[13] *See Light Cigarettes*,

---

[12] A study relied upon plaintiff proves the point. While the four-week study only analyzed the smoking habits of five smokers who had switched from full flavored cigarettes to light cigarettes, the study found that two out of the five (or 40%) received less tar and nicotine from light cigarettes. (*See* Doc. No. 82-1 at 2657 [citing Ex. 5]; Declaration of Barbro Goodman, Doc. No. 85-57 [CD manually filed and maintained by the Clerk of Courts] at ¶¶ 23-25.)

[13] In a similar vein, it would be necessary to perform individual inquires to determine whether each class member's compensation was the result of addiction to nicotine. It is alleged in this action that PM USA intentionally manipulated the levels of nicotine in its Marlboro Lights to ensure addition. (Doc. No. 1 at ¶¶ 48-50; Plaintiff's Brief in Support of Motion for Class Certification, Doc. No. 82-1 at 2659 [alleging that Marlboro Lights were designed "to ensure that smokers of their light cigarettes continued to receive addictive levels of nicotine[.]"]). However, Dr. Valberg opined that not all smokers of Marlboro Lights are addicted to nicotine. (Doc. No. 85-10 at ¶¶ 38-41.) According to Dr. Valberg, "chippers"—smokers who smoke on a regular basis but do not smoke daily—currently comprise more than 21% of the smoking public and do not typically compensate. (*Id.*) "Whether a smoker is a chipper can only be determined based on information about the smoker." (*Id.* at ¶ 41.)

271 F.R.D. at 416.

>    A.    *Reliance, Proximate Cause and Common Proof*

Other individual inquires would predominate the litigation. The common law fraud claim will require proof that each class member relied upon the allegedly fraudulent representations and omissions and that this reliance was the proximate cause of the injury.[14] *See Regal Cinemas, Inc. v. W & M Props*., 90 F. App'x 824, 826 (6th Cir. 2004) (the elements of fraud are "justifiable reliance and resulting damages"); *Burr v. Bd. of Comm'rs*, 23 Ohio St. 3d 69, 491 N.E.2d 1101, ¶ 2 of syllabus (1986) (Under Ohio law, the elements of fraud include: a material misrepresentation, made with the intention to mislead, justifiable reliance on the misrepresentation, and a resulting injury proximately caused by the reliance.) Such individualized proof would also be necessary for the breach of warranty claims.[15] *See White v. DePuy*, *Inc.*, 129 Ohio App. 3d 472, 484-85, 718 N.E.2d 450 (Ohio Ct. App. 1998) (breach of implied warranty, under Ohio Rev. Code § 2307.77, requires proof of justifiable reliance on the representation); *Wagner v. Roche Labs*., 85 Ohio St. 3d 457, 709 N.E.2d 162, 164 (1999) ("An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase.") (internal quotation omitted).

---

[14] It is for this reason that the Advisory Committee Notes to Rule 23(b)(3) (1966 Amendment) provide that "a fraud case may be unsuited for treatment as a class action if there was material variation . . . in the kinds or degrees of reliance by the persons to whom [the representations] were addressed."

[15] Similarly, unjust enrichment requires a causal connection. *See Johnson v. Lindquist*, No. 12AP-140, 2012 WL 5945965, at *2 (Ohio Ct. App. 2012) ("[O]ne factor in deciding whether there has been unjust enrichment is the party's expectation when the loss occurred.") (internal quotation omitted). As one court observed, "If [a class member] did not think that he was purchasing cigarettes [that were necessarily safer to smoke than regular cigarettes], then his receiving cigarettes that did not have that feature would not have resulted in unjust enrichment." *Wyatt*, 2013 WL 4046334, at *6.

PM USA cites survey evidence and market data that suggest that only a small portion of smokers chose light cigarettes because they believe that there is a health benefit in doing so. (Affidavit of Pascal Fernandez, Doc. No. 85-78 at ¶¶ 46-54, 62-65, Atts. 8-16 [noting that there is no evidence of any impact on price or the relative market share of light cigarettes, which would be expected if smokers purchased lights because of fraud]). PM USA also highlights a well-known 2001 study conducted by the National Cancer Institute ("NCI"), often referred to as "Monograph 13," which found that there was no convincing evidence that the changes in cigarette design had resulted in the decrease in disease caused by cigarettes. (Monograph 13, Doc. No. 85-25.) Courts have relied on the findings of this study to support a determination that consumers may not have been motivated by health reasons to purchase light cigarettes.[16] *See, e.g., McLaughlin*, 522 F.3d at 227 ("Given the lack of appreciable drop in the demand or price of light cigarettes after the truth about Lights was revealed in Monograph 13, plaintiffs' argument that defendants' misrepresentation caused the market to shift and the price of Lights to be inflated fails as a matter of law."); *Wyatt* 2013 WL 4046334, at *2-4 (relying, in part, on Monograph 13).

Plaintiff does not attempt to meet her burden of proof by refuting PM USA's evidence, but, instead, she posits that evidence of varying degrees of reliance is

---

[16]Plaintiff challenges PM USA's references to depositions taken in other litigation wherein smokers testified that they either did not believe or did not rely upon the representations that light cigarettes were healthier than full flavored cigarettes, suggesting that such evidence would not be admissible at trial under the Federal Rules of Evidence. While some courts have observed that evidentiary rules are not strictly applied on a motion for class certification, *see Fisher v. Ciba Specialty Chems. Corp*., 238 F.R.D. 273, 279 (S.D. Ala. 2006), *Rockey v. Courtesy Motors, Inc*., 199 F.R.D. 578, 582 (W.D. Mich. 2001), this position is potentially undermined by the determination in *Comcast* that class certification must be supported by "evidentiary proof[.]" *Comcas*t, 133 S. Ct. at 1432. In any event, the Court elects not to consider this evidence in ruling on class certification.

irrelevant because reliance can be presumed across the class. In support, she cites several Ohio cases that have applied this presumption to class actions. (*See* Plaintiff's Reply Brief, Doc. No. 87 at 4999-5002 [collecting Ohio cases].) Plaintiff relies upon these decisions for the proposition that, when the same written representations are made to the entire class, no individual inquiry as to reliance is necessary. *See Cope v. Metro. Life Ins. Co.*, 82 Ohio St. 3d 426, 430, 696 N.E.2d 1001 (1998) ("the existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud or misrepresentation claim, especially where written misrepresentations or omissions are involved").

Courts have recognized that such an approach is not warranted in every case. Before the court in *Hale v. Enerco Group, Inc.,* 288 F.R.D. 139 (N.D. Ohio 2012) was a motion to certify a class of consumers who had purchased allegedly defective heaters, based, in part, on the argument that reliance on written representations could be presumed class-wide. Recognizing that there were no bright line rules that governed when common proof of reliance was appropriate, the court applied "common-sense judgments." *Id*. at 148. The court observed that the use of common proof was appropriate in cases where it was a "virtual certainty" that the consumers relied on the misrepresentations, such as where an insurer sold certain insurance policies at a higher price while concealing the availability of lower-price policies offering identical coverage and service. *Id*. at 149; *see, e.g., Stanich v. Travelers Indem. Co*., 249 F.R.D. 506, 510 (N.D. Ohio 2008). The court in *Hale* found that the use of common proof was inappropriate in other cases, specifically drawing attention to light cigarette cases, where

it was less than clear that individual members necessarily relied on the representations. *Hale*, 288 F.R.D. at 149 (citing *McLaughlin*, 522 F.3d at 220-21).

Indeed, other federal courts have rejected the use of common proof of reliance in light cigarette cases. *See, e.g., McLaughlin*, 522 F.3d at 223 ("reliance on the misrepresentation [] cannot be the subject of general proof"); *Benedict*, 241 F.R.D. at 679 ("If the acts or practices that constitute a violation of the [state statute] are defendants' statements regarding light cigarettes, it is not at all clear to the court how [the named plaintiff] and the other class members can recover damages caused by the statements without showing individual reliance on them."); *Light Cigarettes*, 271 F.R.D. at 420-21 (rejecting use of common proof for reliance). As in these cases, the Court finds that reliance cannot be presumed where the undisputed record establishes that smokers did not necessarily rely on PM USA's representations of lower tar and nicotine in making their purchases.[17] Because it is not "virtually certain" that class members all relied upon PM USA's representations, presuming reliance would be inappropriate.[18]

---

[17] Of course, presuming reliance—especially in light of record evidence to the contrary—would be inconsistent with the mandate to engage in a rigorous analysis of the Rule 23 factors. *See generally Comcast*, 133 S. Ct. at 1432.

[18] According to PM USA, potential affirmative defenses—assumption of the risk and the voluntary pay doctrine—also raise individual issues that defeat certification. PM USA argues that assumption of the risk will require individual inquiries into whether the consumer knew and understood the risk and voluntarily accepted it freely. In like fashion, PM USA asserts its statute of limitation and failure to mitigate defenses will also need individualized attention. While "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members[,]" previously federal courts considering the issue of certification of classes in light cigarettes cases have factored the existence of individualized affirmative defenses into their determination that individual issues predominated. *Light Cigarettes*, 271 F.R.D. at 421 (noting that "both the statute of limitation and the voluntary payment doctrine are individual inquiries"); *see McLaughlin*, 522 F.3d at 233 ("the presence of individual defenses does not by its terms preclude class certification . . . But in this case, there is no doubt that a substantial number of class members were on notice of defendants' alleged fraud before the class period"). While, standing alone, these individual defenses may be insufficient to deny class certification, the prospect of even more individual inquiries reinforces the Court's determination that class certification would be unwieldy.

22

B.      *Damages and the Recent Decision in Whirlpool*

PM USA argues that, for the same reason that reliance and proximate cause cannot be determined class-wide, individual findings of damages will be necessary. Plaintiff advocates for a finding that the economic loss or harm is the same for each putative class member because each light cigarette purchased was "worth less than" each consumer paid for it. (Doc. No. 82-1 at 2662.) In support of her position, plaintiff relies heavily upon the Sixth Circuit's recent decision in *Whirlpool*, wherein the court affirmed the certification of a class of consumers and specifically reserved the issue of damages for individual inquiry. In fact, it is plaintiff's position that the rationale in *Whirlpool* leads to the inescapable conclusion that all of the Rule 23 factors, including predominance and superiority, are satisfied. Plaintiff's reliance on *Whirlpool* is misplaced.

In *Whirlpool*, consumers brought a putative class action against the manufacturer of front-load washing machines. The class members alleged that the washing machines were prone to developing mold in the wash chamber. The Sixth Circuit affirmed the trial court's certification of the class, finding that the question of whether the washing machines suffered from a design defect that facilitated the development of mold in the wash chamber was common to the class. *Whirlpool*, 722 F.3d at 854-55.

In so ruling, the court determined that the fact that some of the class members had yet to experience the phenomenon of moldy clothing (and may never) did not defeat class certification because it found that, if the class proved the common defect, then all class members suffered the same injury: they paid a premium for a washing

machine that was worth less than they paid for it.[19] *Id*. at 857. The court further reasoned that "all [washing machine] owners were injured at the point of sale upon paying a premium for the [washing machine] as designed[,]" and underscored the fact that common inquiries "will produce a common answer about whether the alleged design defects . . . proximately caused mold or mildew to grow in the machines." *Id*. at 855, 857. In light of the common issues of liability, proximate cause, and injury, the court found that class certification was appropriate, and that any individualized inquiries into actual damages could be handled in a separate proceeding.

Plaintiff submits that "the Whirlpool case and this case are very similar." (Doc. No. 87 at 5013). The Court disagrees. Unlike the allegedly defective washing machines in *Whirlpool*, there is no inherent design defect that rendered the product less valuable, regardless of who purchased it. Rather, the record before this Court demonstrates that, for many, the cigarettes perform precisely the way they are warranted to do—delivering less tar and nicotine. Therefore, there was no common injury upon the sale of the product.[20] The potential to realize an injury from the product in this case depends upon the manner in which each consumer used the product and the unique characteristics of each consumer, while the court in *Whirlpool* specifically observed that variations in laundry habits from consumer to consumer did not alter or affect the mold problem. *Id*. at 854. Because individual issues as to liability, proximate cause, and injury

---

[19] The court explained that "[e]vidence will either prove or disprove as to all class members whether the alleged design defects caused the collection of biofilm, promoting mold growth, and whether Whirlpool failed to warn consumers adequately of the propensity for mold growth in the [washing machines]." *Id*. at 859.

[20] Likewise, smokers who purchased light cigarettes for reasons other than the promise of lower tar and nicotine, such as flavor, received exactly what they believed they were purchasing.

abound in the present case, it is readily distinguishable from *Whirlpool*.[21] Thus, even if the Court were to reserve the issue of damages for individual inquiries—as the district court did in *Whirlpool*—individual issues going to the heart of plaintiff's claims would still render class certification impracticable.

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds that plaintiff has failed to satisfy her burden of establishing that this case is suitable for treatment as a class action. Therefore, plaintiff's motion for class certification is DENIED. Because plaintiff will proceed as the sole party plaintiff, PM USA's motion to dismiss the class component of plaintiff's common law fraud and unjust enrichment claims is MOOT.

**IT IS SO ORDERED.**

Dated: February 28, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[21] It is also worth noting that, unlike the product in *Whirlpool*, PM USA's light cigarettes were not sold at a premium. To the contrary, "Lights have always been priced the same as full-flavored cigarettes." *McLaughlin*, 522 F.3d at 228. (*See also* Doc. No. 85-76 at ¶¶ 59-65, Atts. 16-18.) It is an important distinction. Because consumers paid the same price for the light cigarettes, it is not possible to develop a class-wide model for calculating injury based on the loss of the benefit of the bargain. The Second Circuit commented on this shortcoming when it observed that:

> individual smokers would have incurred different losses depending on what they would have opted to do, but for defendants' misrepresentation. For example, smokers who would have purchased full-flavored cigarettes instead of Lights had they known that Lights were not healthier would have suffered no injury because Lights have always been priced the same as full-flavored cigarettes. By contrast, those who would have quit smoking altogether could recover their expenses in purchasing Lights. And those who would have continued to smoke, but in greater moderation, could have recovered something in between. Thus, on the issue of out-of-pocket loss, individual questions predominate; plaintiffs cannot meet their burden of showing that injury is amenable to common proof.

*McLaughlin*, 522 F.3d at 228.